IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| RIMAC SEGUROS Y REASEGUROS<br>KOMATSU AMERICA CORPORATION<br>KOMATSU MITSUI MAQUINARIEAS<br>PERU S.A.<br>DISTRIBUIDORA CUMMINS PERU SAC<br>CUMMINGS INC., AND<br>HENSLEY INDUSTRIES, INC.,<br><br>          Plaintiffs,<br><br>v.<br><br>C.H. ROBINSON INTERNATIONAL, INC.,<br>D/B/A CHRISTAL LINES,<br><br>          Defendant. | Case Number: 21-cv-01288<br><br>Hon. Paul A Magnuson<br><br>Magistrate Hon. Becky R. Thorson |

## C.H. ROBINSON INTERNATIONAL, INC. D/B/A CHRISTAL LINES' ANSWER TO PLAINTIFFS' COMPLAINT AND COUNTERCLAIM

Defendant, C.H. Robinson International, Inc. d/b/a CHRistal Lines ("CHR"), by and through its attorneys of Brown & Carlson PA, for its Answer to Plaintiffs' Complaint and Counterclaim, and states as follows:

### JURISDICTION AND VENUE

1. This is an action for indemnity for salvage payments made by the plaintiffs at RIMAC SEGUROS Y REASEGUROS, KOMATSU AMERICA CORPORATION, KOMATSU MITSUI MAQUINARIAS PERU S.A., DISTRIBUIDORA CUMMINS PERY SAC, CUMMINGS INC. and HENSLEY INDUSTRIES, INC. on behalf of cargo interests including the insureds, shippers and consignees due to the grounding of the container ship AS Fortuna resulting in damages in excess of $597,200.40.

**ANSWER:** CHR admits only that Plaintiffs filed this action purporting to allege a cause of action for indemnity for salvage payments, due to the grounding of the container ship AS Fortuna.

CHR denies any remaining allegations contained in Paragraph 1. Further answering, CHR states that Plaintiffs' payment of salvage expenses was part of a general average declared by the vessel owners of the AS Fortuna as consequence of the grounding.

2. This is an Admiralty and Maritime claim within the Admiralty jurisdiction of this Court pursuant to 28 U.S.C. § 1333 and this court has jurisdiction under the constitutional grant of admiralty and maritime jurisdiction under Article 3, Section 2, of the Constitution of the United States.

**ANSWER:** CHR admits the allegations contained in Paragraph 2.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and based upon a contractual forum selection clause contained in the defendant's House Bills of Lading.

**ANSWER:** CHR admits the allegations contained in Paragraph 3. A true and accurate copies of CHRristal House Bill of Lading Nos. 273792116MIA, 27394553MIA, 273793848MIA, 273788323MIA, and 273791354, and the Terms and Conditions of Contract on the reverse side of each bill of lading thereof, all of which are attached as **Exhibits A**, **B**, **C**, **D**, and **E**, respectively, and fully incorporated herein, by reference.

## THE PARTIES

4. The plaintiff, RIMAC SEGUROS Y REASEGUROS ("RIMAC") is a foreign insurance underwriter providing marine cargo insurance coverage for cargo shipments made on board the container ship AS Fortuna Voyage 16 including from Miami, Florida to Guayaquil, Ecuador including some of the salved cargo. The plaintiff RIMAC insured KOMATSU MITSUI MAQUINARIAS PERU S.A. and DISTRIBUIDORA CUMMINS PERU SAC and the shippers and consignees under an international floating cargo insurance policy 3001-507070 which was in full force and effect at all times relevant hereto.

**ANSWER:** CHR lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 4, and therefore, denies the same and demands strict proof thereof.

5. The plaintiff KOMATSU MITSUI MAQUINARIAS PERU S.A. is a foreign Corporation and was the shipper and insured of some of the salved cargo.

**ANSWER:** CHR lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 5, and therefore, denies the same and demands strict proof thereof.

6. The plaintiff KOMATSU AMERICA CORPORATION is a foreign Corporation and was the shipper of some of the salved cargo.

**ANSWER:** CHR lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 6, and therefore, denies the same and demands strict proof thereof.

7. The plaintiff DISTRIBUIDORA CUMMINS PERU SAC is a foreign Corporation and was the shipper, consignee and insured of some of the salved cargo.

**ANSWER:** CHR lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 7, and therefore, denies the same and demands strict proof thereof.

8. The plaintiff, CUMMINGS INC. is a foreign Corporation and was the shipper of some of the salved cargo.

**ANSWER:** CHR lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 8, and therefore, denies the same and demands strict proof thereof.

9. The plaintiff, HENSLEY INDUSTRIES, INC. is a foreign Corporation and was the shipper of some of the salved cargo.

**ANSWER:** CHR lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 9, and therefore, denies the same and demands strict proof thereof.

10. The defendant C.H. ROBINSON INTERNATIONAL, INC. d/b/a CHRISTAL LINES ("CHRistal Lines") is a Delaware corporation with its principal place of business located in Eden Prairie, Minnesota. The defendant, CHRistal Lines is a Non Vessel Operating Common Carrier ("NVOCC") engaged in the ocean carriage of goods for hire providing direct, regular service between North America and South America including Guayaquil, Ecuador. The defendant,

CHRistal Lines at all times material hereto was the NVOCC of the cargos described in the Complaint on board the container ship AS Fortuna Voyage 16 from Miami, Florida to Guayaquil, Ecuador at the time of the grounding and salvage.

**ANSWER:** CHR admits only that its principal place of business located in Eden Prairie, Minnesota, and that it is engaged in the business of providing ocean transportation services as a Non-Vessel Operating Common Carrier ("NVOCC"). Further answering, CHR admits that, as an NVOCC, it issued CHRistal House Bill of Lading Nos. 273792116MIA, 27394553MIA, 273793848MIA, 273788323MIA, and 273791354, along with the Terms and Conditions of Contract, attached on the reverse side thereof (collectively the "CHR HBLs"), to Plaintiffs, Komatsu Mitsui Maquinarias Peru S.A., Distribuidora Cummins Peru SAC, Cummings Inc. and Hensley Industries, Inc. (collectively "Cargo Interests"), and that the Terms and Conditions of Contract set forth the rights and obligations of the parties to the CHR HBLs. *See* **Exhibits A**, **B**, **C**, **D**, and **E**. In addition, CHR admits only that the CHR HBLs covered the shipments of engine machinery parts and accessories (the "Cargo") for ocean transportation from the port of Miami, Florida, United States to the port of Callao, Peru. *See id.* CHR denies any remaining allegations contained in Paragraph 10.

11. All conditions precedent to the filing of this lawsuit for salvage indemnity have occurred or have been waived.

**ANSWER:** Paragraph 11 states legal conclusions and not well-pleaded facts, to which no response is required. To the extent a response is required, CHR denies the allegations contained in Paragraph 11.

## THE CAUSE OF ACTION

12. This case concerns the salvage indemnity claims of the plaintiffs RIMAC SEGUROS Y REASEGUROS, KOMATSU AMERICA CORPORATION, KOMATSU MITSUI MAQUINARIAS PERU S.A., DISTRIBUIDORA CUMMINS PERU SAC, CUMMINGS INC. and HENSLEY INDUSTRIES, INC. for the cargo carried by on board the vessel AS Fortuna for contributions paid by RIMAC SEGUROS Y REASEGUROS for itself and on behalf of the shippers, consignees and insureds to the Salvors T & T Salvage LLC in the wake of the grounding

4

of the vessel AS Fortuna in Ecuadorian waters on September 13, 2018. The salvage indemnity claim is directed against the defendant CHRistal (sic) Lines as the NVOCC of the cargo on board the container ship AS Fortuna at the time of its grounding and salvage.

**ANSWER:** CHR admits only that this case involves the purported allegations of salvage indemnity resulting from the September 13, 2018, grounding of the AS Fortuna in Ecuadorian waters. In addition, CHR admits only that the CHR HBLs' Terms and Conditions of Contract, issued by CHR to Cargo Interests, control the issue of salvage expenses, which are general average in nature. Paragraph 15 of the CHR HBLs Terms and Conditions of Contract states in relevant part:

> **15. General Average.** Merchant shall indemnify Carrier in respect to any claims of a general average nature which may be made on Carrier and shall provide security as may be required by Carrier in this connection. Goods and/or containers shall contribute and participate in general average whether carried on or under deck.

*See* **Exhibits A**, **B**, **C**, **D**, and **E**, **¶15**. CHR denies any remaining allegations contained in Paragraph 12.

13. On September 13, 2018, the AS Fortuna grounded shortly after leaving the port of Guayaquil, Ecuador due to its unseaworthiness. The vessel was unseaworthy before the voyage, at the start of the voyage and at the time of the grounding. The AS Fortuna was on its way from Guayaquil to the sea and after passing buoy No. 11 a total blackout occurred. The total blackout was due to unseaworthiness including, but not limited to, the failure of the reducing valve of the fuel system which resulted in a total blackout of the vessel and a loss of steering. Due to the unseaworthiness and loss of steering the vessel continued to fall to starboard without control in the trajectory causing it to lie on a sand bank with an approximate depth of 4 to 5 meters. The vessel was exposed to strong waves and water flooded one of the holds.

**ANSWER:** CHR admits only that on September 13, 2018, the AS Fortuna grounded in the channel of the port of Guayaquil, Ecuador. CHR lacks knowledge or information sufficient to form a belief about the remaining allegations contained in Paragraph 13, and therefore, denies the same and demands strict proof thereof.

14. The vessel and its cargo were in peril and could not come loose on its own. The Captain on behalf of the defendant NVOCC CHRistal Lines engaged the Salvors T & T Salvage LLC which provided assistance on the basis of the Lloyd's Open Form of Salvage Agreement

("LOF") dated September 17, 2018. The master is deemed to enter into such an assistance contract also on behalf of cargo interests including the cargo insurers, the cargo shippers and the cargo consignees. A copy of the LOF Salvage Agreement, Guarantee to the Council of Lloyd's and to the Contractors and Letter of Undertaking/Salvage Counter Guarantee is attached as **Exhibit 1.**

**ANSWER:** CHR admits that T & T Salvage LLC ("T & T") was engaged to assist in freeing the AS Fortuna from its grounding pursuant to a September 17, 2018 Salvage Agreement on Lloyd's Open Form ("September 17, 2018 LOF"). *See* Guarantee to the Council of Lloyd's and to the Contractors Form, attached hereto as **Exhibit F** and fully incorporated herein, by reference. Further answering, the remaining allegations contained in Paragraph 14 contain legal conclusions and not well-pleaded facts, to which no response is required. To the extent that a response is required, CHR denies the remaining allegations contained in Paragraph 14. Plaintiffs have failed to attach "Exhibit 1" to the Complaint, therefore, CHR lacks knowledge or information sufficient to form a belief about the purported "Exhibit 1" contained in Paragraph 14.

15. The Salvors T & T Salvage LLC were successful in their salvage operation in that they preserved the vessel, cargo and freight from further damage. A settlement has been reached between the stakeholders in the cargo including the plaintiff RIMAC SEGUROS Y REASEGUROS and the Salvors T & T Salvage LLC for the settlement of the salvage claim. A copy of the Settlement Agreement is attached as **Exhibit 2.** In the settlement agreement dated June 28, 2019 it was agreed between T & T Salvage LLC and the cargo interests that a salvage contribution of $5,821,003.38 should be paid in respect of all cargoes involved in the settlement. This means that each individual interested party including the plaintiffs RIMAC SEGUROS Y REASEGUROS had to pay 27.31% of the salved value of its cargo to the Salvors.

**ANSWER:** Plaintiffs have failed to attach "Exhibit 2" to the Complaint, however, CHR believes that "Exhibit 2" is what CHR has attached hereto as **Exhibit G**, the T & T Salvage and AS Fortuna Settlement Agreement, which is fully incorporated herein, by reference. CHR admits only that T & T successfully freed the AS Fortuna from grounding on or around September 28, 2018. Further answering, CHR admits only that T & T entered into a settlement agreement with "The Owners of 'AS Fortuna' her cargo, freight, bunkers, stores and any other property thereon," agreeing that "Respondents will pay to the Contractors in proportion to their respective share in

6

… the sum of US$5,821,003.38," which included salvage expenses that were a part of the general average declared by the vessel owners of the AS Fortuna. *See id.* CHR lacks knowledge or information sufficient to form a belief about the remaining allegations contained in Paragraph 15, and therefore, denies the same and demands strict proof thereof.

16. The plaintiff RIMAC SEGUROS Y REASEGUROS insured the cargo interests with a value of $2,186,688.13. A salvage contribution in the amount of $597,200.40 was paid on behalf of the plaintiffs and cargo interests, shippers and consignees in this proceedings (sic) to the Salvors T & T Salvage LLC based on 27.31% the value of the insured cargo of $2,186,688.13.

**ANSWER:** CHR lacks knowledge or information sufficient to form a belief about the allegations contained in Paragraph 16, and therefore, denies the same and demands strict proof thereof.

17. The plaintiff RIMAC SEGUROS Y REASEGUROS for itself and on behalf of the shippers, consignees and insureds of the cargo have made the payment of the salvage contributions for the cargo in accordance with the provisions of the settlement agreement. The salvage claim resulted from the grounding of the AS Fortuna. The grounding resulted from the unseaworthiness of the AS Fortuna. The defendant CHRistal Lines as the NVOCC of cargo on board the AS Fortuna breached its obligation to provide a seaworthy vessel and the defendant CHRistal Lines is liable for the grounding incident and the damages and costs caused by the unseaworthiness of its vessel including salvage. The defendant CHRistal Lines as the NVOCC ofthe cargo on board the AS Fortuna at the time of the incident is liable to pay compensation for the damage suffered and costs incurred as a result of the grounding including salvage.

**ANSWER:** CHR lacks knowledge or information to form a believe about Plaintiffs' allegation that "RIMAC SEGUROS Y REASEGUROS for itself and on behalf of the shippers, consignees and insureds of the cargo have made the payment of the salvage contributions for the cargo in accordance with the provisions of the settlement agreement," and therefore, denies the same and demands strict proof thereof. Further answering, the remaining allegations contained in Paragraph 17 state legal conclusions and not well-pleaded facts, to which no response is required. To the extent that a response is required, CHR denies the remaining allegations contained in Paragraph 17.

WHEREFORE, Defendant, C.H. Robinson International, Inc., d/b/a CHRistal Lines, respectfully requests that this Court enter a judgment in its favor and against Plaintiffs, Rimac Seguros Y Reaseguros, Komatsu Mitsui Maquinarias Peru S.A., Distribuidora Cummins Peru SAC, Cummings Inc. and Hensley Industries, Inc., and any other relief that this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Defendant, CHR, by its undersigned counsel, for its Affirmative Defenses to Plaintiffs' complaint, states as follows:

### First Defense
### Failure to State a Claim

1. The claims alleged in the Complaint fail to state a claim upon which relief may be granted.

### Second Defense
### Fault of Third-Parties and Right to Contribution and Indemnification

2. The alleged damages complained of were caused by the direct and proximate negligence of other parties, their agents or employees, or by other unknown at this time over whom CHR had no control at any time relevant hereto, and in the event CHR is found liable to Plaintiff, which liability is expressly denied, CHR will be entitled to indemnification, contribution or apportionment of liability pursuant to applicable law.

### Third Defense
### CHRistal Bill of Lading Nos. 273792116MIA, 27394553MIA, 273793848MIA, 273788323MIA, and 273791354
### No Liability Under the Terms and Conditions of Contract

3. CHR is entitled to all of the rights, defenses, disclaimers and limitations of liability applicable under CHR HBLs and Terms and Conditions of Contract appearing on the reverse side thereof, both of which are attached as **Exhibits A**, **B**, **C**, **D**, and **E**, hereto, and are incorporated

8

herein by reference. The CHR HBLs and Terms and Conditions of Contract specifically contemplate the responsibilities and obligations of the parties to the contract of carriage, including Plaintiffs' duty to contribute to any claim that is general average in nature. The CHR HBLs' Terms and Conditions of Contract state in relevant part:

> **5. Scope of Carriage.** The intended carriage shall not be limited to the direct route, but shall also include any deviation for any purpose connected with the service, including any maintenance of vessel and/or crew. If at any time the carriage is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind, including strike, lockout or other labor unrest, governmental action, acts of terror, war, riots, bad weather, ice, quarantine, or the condition of the goods, whenever and however arising, whether or not the carriage has commenced, Carrier may:
>
> (a) without notice to Merchant, abandon the carriage of the goods and where reasonably possible, place the goods or any part of them at Merchant's disposal at any place the Carrier may deem safe and convenient, and the responsibility of Carrier with respect to such goods shall then cease.
>
> (b) without prejudice to the Carrier's right subsequently to abandon the carriage under (a) above, continue the carriage. In any event, Carrier shall be entitled to full freight Charges on goods received for carriage, and Merchant shall pay any addition costs resulting from the above mentioned circumstances.
>
> \*   \*   \*
>
> **15. General Average.** Merchant shall indemnify Carrier in respect to any claims of a general average nature which may be made on Carrier and shall provide security as may be required by Carrier in this connection. Goods and/or containers shall contribute and participate in general average whether carried on or under deck.
>
> \*   \*   \*
>
> **23. Application of Defenses.** All defenses and limits of liability shall apply in **any action** against Carrier arising out of or related to carriage under this Bill of Lading whether the action be founded in contract or tort.

*See* **Exhibits A**, **B**, **C**, **D**, and **E**, ¶¶ **5**, **15**, **23**.

CHR issued the CHR HBLs and the Terms and Conditions of Contract to the Cargo Interests for the shipments of the Cargo. On or around September 13, 2018, the AS Fortuna grounded in the channel of the port of Guayaquil, Ecuador. T & T was engaged to assist in the

lightering operations of the AS Fortuna, and successfully freed the AS Fortuna on or around September 28, 2018. *See* **Exhibit F**.

On October 1, 2018, the owners of the AS Fortuna declared general average for all salvage expenses that were incurred in performance of the lightering operations by T & T. Also on October 1, 2018, CHR forwarded the notice of declaration of general average, along with general average instructions, to Cargo Interests' representative, Pieri Maguiña, of Komatsu Mitsui Maquinarias Peru S.A. ("KMMP"). *See* October 1, 2018, E-mail from CHR to Pieri Maguiña, of KMMP, re Declaration of General Average and Instructions, attached hereto as **Exhibit H**[1], and fully incorporated by reference, herein. As required under the CHR HBLs' Terms and Conditions of Contract, Cargo Interests forwarded the general average instructions to their insurer, Rimac Seguros Y Reaseguros ("Rimac"). Also, as required under the CHR HBLs' Terms and Conditions of Contract, Rimac followed the general average instructions set forth by the general average adjusters, including the payment and execution of Average Bonds; General Average Guarantees; and Salvage Guarantees (Securities) and Letter of Undertaking for the Cargo being carried under each CHR HBL. *See* Average Bonds Signed by Plaintiffs, attached hereto as **Exhibit I**; General Average Guarantees signed by Plaintiffs, attached hereto as **Exhibit J**; Salvage Guarantee (Securities) and Letter of Undertaking, attached hereto as **Exhibit K**, all of which are fully incorporated herein, by reference. *See also*, **Exhibits A**, **B**, **C**, **D**, and **E**, ¶ **15**.

The CHR HBLs' Terms and Conditions of Contract expressly contemplate payment of claims that are general average in nature, or in this case, salvage payments. Plaintiffs, and not CHR, were responsible for any and all salvage costs arising out of the grounding of the AS Fortuna,

---

[1] The original e-mail described in **Exhibit H** was in the sender and recipient's native language, Spanish. **Exhibit H** is a true and accurate translation of the E-mail and its attachment, MV AS Fortuna UPdate #4, as well as, the certifications of those translations.

and fulfilled those obligations, as required by the CHR HBLs. *See* **Exhibits G**, **I**, **J**, and **K**. Plaintiffs may not recovery any amount of salvage monies paid to T & T Salvage from CHR pursuant the CHR HBLs and the Terms and Conditions of Contract.

### Fourth Defense
### Contractual Indemnification

4.     Defendant, CHR is entitled to contractual indemnification from Plaintiffs, Komatsu Mitsui Maquinarias Peru S.A., Distribuidora Cummins Peru SAC, Cummings Inc. and Hensley Industries, Inc., pursuant the CHR HBL's Terms and Conditions of Contract. Paragraph 15 states:

> **15. General Average.** Merchant shall indemnify Carrier in respect to any claims of a general average nature which may be made on Carrier and shall provide security as may be required by Carrier in this connection. Goods and/or containers shall contribute and participate in general average whether carried on or under deck.

*See* **Exhibits A**, **B**, **C**, **D**, and **E**, ¶ **15**.

In the event that CHR is found liable to Plaintiff, Rimac, which is expressly denied, CHR is entitled to be indemnified in respect to any claims of general average in nature, including salvage indemnity claims. Additionally, CHR is entitled to any and all attorney's fees and costs incurred in defending this salvage indemnity action, regardless of CHR's liability to Rimac, which is expressly denied.

### Fifth Defense
### No Duty to Provide Seaworthy Vessel

5.     CHR's status as an NVOCC is based solely on its issuance of CHR HBLs. Therefore, CHR owes no duty to Plaintiffs to provide a seaworthy vessel, as CHR did not own or operate the AS Fortuna, nor did CHR exercise any control over the AS Fortuna to inspect, maintain, or order repairs. *See Starr Indemnity & Liab. Co. v. Transfair N. Am. Int'l Freight Servs.*, 2018 U.S. Dist. LEXIS 142910, *12, 2018AMC 2298 (Aug. 22, 2018 W.D. Wash.) ("By

11

definition, NVOCCs, which do not operate vessels, are not likely to have the right or practical ability to inspect ships for seaworthiness or order repairs. It strikes this Court as unrealistic to hold NVOCCs to impossible duties.").

### Sixth Defense
### Waiver of Claim of Unseaworthiness and Settlement Bar

6. The Plaintiffs waived any right to claim recovery on the theory of unseaworthiness. Plaintiffs entered into the T & T Settlement Agreement, resolving all claims between the parties to the agreement, including "The Owners of the 'AS Fortuna' her cargo, freight, bunkers, stores and any other property thereon." *See* **Exhibit G**. Additionally, settlement agreement set forth that "the Parties will undertake not to bring against each other any proceedings in any Court or tribunal in any jurisdiction in connection with the Services and/or under the LOF…" *id.*, ¶ **5**. Plaintiffs, as parties to the settlement agreement, waived any rights to pursue the "Owners of the AS Fortuna" in relation to the salvage payments, which would include any claims of unseaworthiness on part of the vessel owner/operator. As such, Plaintiffs have waived any argument for unseaworthiness.

### Seventh Defense
### Time Bar - CHRistal Bill of Lading Nos. 273792116MIA, 27394553MIA, 273793848MIA, 273788323MIA, and 273791354

7. The claims alleged in the Complaint are time-barred because Plaintiff failed to file and serve this lawsuit within one year of delivery, or when the goods should have been delivered, as required by the CHR HBLs' Terms and Conditions of Contract, which provide:

> **18. Notice of Claim & Time Bar.** Written notice of claims for loss of or damage to the goods occurring or presumed to have occurred while in the custody or control of Carrier must be given to Carrier at the port of discharge before or at the time of removal of the goods by one entitled to delivery. If such notice is not provided, removal shall be prima facie evidence of delivery by the Carrier. If such loss of damage is not apparent, Carrier must be given written notice within three (3) days of delivery. All claims for loss or damage of cargo must be filed with Carrier who will be solely responsible to process them to

conclusion. Carrier shall be subrogated automatically to all rights of the Merchant as against all others, including but not limited to underlying carriers, with respect to such claims. All notices of loss or damage must be sent to the "For Delivery, Apply To" address indicated on the face of the Bill of Lading or, if blank, to C.H. Robinson International, Inc., Attn: Ocean Claims/Insurance Department, 1501 North Mittel Blvd.., Suite B, Wood Dale, IL 60191 (U.S.A.). In any event, **Carrier shall be discharged from all liability unless suit is brought within twelve (12) months after the date of delivery of the goods**, or the date when the good should have been delivered. Suit shall not be deemed brought against Carrier until jurisdiction shall have been obtained by service of process on the Carrier.

* * *

23. **Application of Defenses.** All defenses and limits of liability shall apply in **any action** against Carrier arising out of or related to carriage under this Bill of Lading whether the action be founded in contract or tort.

See **Exhibits A**, **B**, **C**, **D** and **E**; ¶¶ **18, 23**. (Emphasis added).

The CHR HBLs' Terms and Conditions of Contract contain a suit time bar for any action, and CHR shall be discharged from all liability, unless claimant files suit and serves CHR within one year of the delivery of the goods. The Cargo was originally scheduled to be delivered to its destination port on September 10, 2018. However, due to the grounding of the AS Fortuna, the Cargo was not delivered to Callao, Peru until October 29, 2018. Plaintiffs failed to file and serve this suit against CHR until September 8, 2021, over two-years after the delivery of the Cargo. Therefore, this lawsuit is time barred.

## Eighth Defense
### Plaintiffs' Suit is Barred Under the Maritime Doctrine of Laches

8.   CHR incorporates its Seventh Defense into its Eighth Defense, as though fully set forth herein. Plaintiffs have unreasonably delayed in pursuing claims against CHR to the detriment and prejudice of CHR, and are barred from pursuing said claims under the maritime doctrine of laches. Plaintiffs were aware of their salvage contribution when the claims were settled on June 28, 2019, as memorialized by the T & T Settlement Agreement. See **Exhibit G**. Plaintiffs did not make a demand on CHR for their purported salvage indemnity claims until June 24, 2020. After

13

Plaintiffs' initial demand on June 24, 2020, CHR and Plaintiffs entered into a Suit Time Standstill Agreement on July 7, 2020, which was effective through February 7, 2021. On February 5, 2021, Plaintiffs improperly filed and served their original complaint in Minnesota state court, citing the CHR HBLs' forum selection clause. *See* Plaintiffs Lawsuit Against CHR Filed in Hennepin County, attached hereto as **Exhibit L**. Plaintiffs deliberately delayed their action by filing in the incorrect forum, although all actions are to be exclusively filed in the U.S. District Court for the District of Minnesota – CHR HBLs' Terms and Conditions of Contract state:

> **20. Place of Suit.** All lawsuits arising out of or related to carriage provided under this Bill of Lading shall be brought in the United States District Court for the District of Minnesota.

*See* **Exhibits A**, **B**, **C**, **D** and **E**; ¶ **20**.

CHR moved to dismiss Plaintiffs' complaint pending in Minnesota state court on the basis that CHR HBLs' Terms and Conditions of Contract contain an enforceable forum selection clause, providing that all lawsuits arising under the CHR HBLs be filed exclusively in the U.S. District Court for the District of Minnesota. On August 23, 2021, Hennepin County District Judge, Lois Conroy, granted CHR's motion to dismiss, and issued an opinion holding that the forum selection clause was valid and enforceable because the salvage indemnity claims arise under the CHR HBLs. *See* Order Granting Motion to Dismiss and Memorandum, attached hereto as **Exhibit M**. The court also held that the CHR HBLs' Terms and Conditions of Contract contemplated for general average events, and that Paragraphs 4 and 15 explicitly govern the responsibilities and obligations of general average events. *See* Order Granting Motion to Dismiss and Memorandum, attached hereto as **Exhibit M**, **p. 11**.

Plaintiffs have unreasonably delayed in pursuing claims to CHR's detriment and prejudice. Thus, Plaintiffs are barred from pursuing such claims.

### Ninth Defense
### Failure to Mitigate Damages

9. Plaintiffs failed to mitigate its claim loss and damages, if any. Therefore, Plaintiffs is barred from recovery all or part of his claimed damages.

### Tenth Defense
### Failure to Add an Indispensable Party

10. Plaintiffs have failed to join parties that are indispensable to this action; specifically, Plaintiffs have failed to join the Seaboard Marine, Ltd., the vessel operator and actual carrier, the vessel, as well as a co-loader of the shipments in question, which carried/and/or legally obligated to carry those shipments alleged to have been damaged and/or lost by Plaintiffs.

WHEREFORE, Defendant, C.H. Robinson International, Inc., d/b/a CHRistal Lines, respectfully requests that this Court enter a judgment in its favor and against Plaintiffs, Rimac Seguros Y Reaseguros, Komatsu Mitsui Maquinarias Peru S.A., Distribuidora Cummins Peru SAC, Cummings Inc. and Hensley Industries, Inc., and any other relief that this Court deems just and proper.

WHEREFORE, Defendant, C.H. Robinson International, Inc., d/b/a CHRistal Lines, respectfully requests that this Court enter a judgment in its favor and against Plaintiffs, Rimac Seguros Y Reaseguros, Komatsu Mitsui Maquinarias Peru S.A., Distribuidora Cummins Peru SAC, Cummings Inc. and Hensley Industries, Inc., and any other relief that this Court deems just and proper.

**C.H. ROBINSON INTERNATIONAL, INC. D/B/A CHRISTAL LINES'
COUNTERCLAIM AGAINST KOMATSU MITSUI MAQUINARIAS PERU S.A.,
DISTRIBUIDORA CUMMINS PERU SAC, CUMMINGS INC. AN DHENSLEY
INDUSTRIES, INC. FOR CONTRACTUAL INDEMNITY**

Defendant, C.H. Robinson International, Inc. d/b/a CHRistal Lines ("CHR"), by and through its undersigned attorneys, for its Counterclaim Against Komatsu Mitsui Maquinarias Peru S.A., Distribuidora Cummins Peru SAC, Cummings Inc. and Hensley Industries, Inc. (collectively "Cargo Interests"), and states as follows:

1. CHR realleges and incorporates herein by reference all previous answers, admissions, denials, and affirmative defenses made in response to Plaintiffs' Complaint.

2. CHR is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in Eden Prairie, Minnesota, and is in the business of providing transportation services as a Non-Vessel Operating Common Carrier ("NVOCC") registered with the Federal Maritime Commission under License No. 003282.

3. CHR issued CHRristal House Bill of Lading Nos. 273792116MIA, 27394553MIA, 273793848MIA, 273788323MIA, and 273791354, and the Terms and Conditions of Contract on the reverse side of each bill of lading thereof (collectively "CHR HBLs" or "Contracts of Carriage"), to Cargo Interests for shipments of engine machinery parts and accessories (the "Cargo") from Miami, Florida to Callao, Peru. *See* **Exhibits A**, **B**, **C**, **D**, and **E**.

4. Paragraph 15 of the CHR HBL's Terms and Conditions of Contract states:

**15. General Average.** Merchant shall indemnify Carrier in respect to any claims of a general average nature which may be made on Carrier and shall provide security as may be required by Carrier in this connection. Goods and/or containers shall contribute and participate in general average whether carried on or under deck.

*See* **Exhibits A**, **B**, **C**, **D**, and **E, ¶ 15**.

5. On or around September 13, 2018, the M/V AS Fortuna, while carrying the Cargo, became grounded in the channel of the port of Guayaquil, Ecuador.

6. On September 17, 2018, T & T Salvage LLC ("T & T") was engaged to assist in the freeing of the AS Fortuna, pursuant Salvage Agreement on Lloyd's Open Form. *See* **Exhibit F**.

7. On or around September 28, 2018, T & T successfully freed the AS Fortuna, and the Cargo, from the grounding.

8. On October 1, 2018, the owners of the AS Fortuna declared general average in relation to the lightering operations performed by T & T.

9. Plaintiff, Rimac Seguros Y Reaseguros ("Rimac"), allegedly insured Cargo Interests and paid a salvage contribution of $597,200.40 to T & T in relation to the lightering operations of the AS Fortuna. (Plaintiffs' Complaint, Doc. No. 1, ¶ 16).

10. Plaintiffs, Rimac and Cargo Interests, filed their Complaint against CHR for alleged salvage indemnity for payments made to T & T. (*Id.*)

11. Pursuant to the CHR HBLs' Terms and Conditions of Contract, CHR was entitled to be indemnified by Cargo Interests for all claims of a general average nature.

## COUNT I
## Breach of Contract

12. CHR repeats and re-alleges the allegations of paragraphs 1-11, as though fully set forth herein.

13. CHR and Cargo Interests entered into a valid and enforceable contract when they entered into the Contracts of Carriage, or CHR HBLs.

14. CHR performed all of its obligations and duties under the CHR HBLs' Terms and Conditions of Contract.

15. Cargo Interests agreed that they would indemnity CHR from any claims of a general average nature.

16. The claims and damages that are alleged by Rimac, and Cargo Interests, arose out of the CHR HBLs, and are general average in nature.

17. Cargo Interests breached the Contracts of Carriage, or the CHR HBLs, by suing CHR, along with Rimac, for salvage indemnity payments, for which, they alone are responsible under the Terms and Conditions of Contract.

18. As a result of Cargo Interests' breach of its obligations and duties under the CHR HBLs, CHR has suffered and continues to suffer loss, and is entitled to damages in the amount of reasonable attorney's fees defending this action, and is also entitled to indemnity for any settlement or judgment that may be entered by or against CHR to Rimac in this action.

WHEREFORE, Defendant, C.H. Robinson International, Inc. d/b/a CHRistal Lines, prays for judgment against Counterclaimants, Komatsu Mitsui Maquinarias Peru S.A., Distribuidora Cummins Peru SAC, Cummings Inc. and Hensley Industries, Inc., for the full amount of any settlement or judgment entered by or against C.H. Robinson International, Inc. d/b/a CHRistal Lines for the damages alleged by Plaintiff, Rimac, including .H. Robinson International, Inc. d/b/a CHRistal Lines' reasonable attorneys' fees and costs incurred in the defense of this action, and in the prosecution of this counterclaim, and for such other and further relief as this Court deems just in the premises.

> Very Respectfully Submitted,
>
> C.H. ROBINSON INTERNATIONAL, INC. d/b/a CHRISTAL LINES

Dated: October 6, 2021            **/s/** Mark G. Pryor

                                                  Mark G. Pryor
                                                  Brown & Carlson, PA
                                                  300 Highway 169 South, Ste. 500
                                                  Minneapolis, MN 55426
                                                  Tel: 763-591-9950
                                                  Fax:763-591-9202
                                                  mpryor@brownandcarlson.com

                                                  *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I, Mark G. Pryor, an attorney, certify that on October 20, 2021, I served C.H. Robinson International, Inc. d/b/a CHRistal Lines Answer to Plaintiffs' Complaint and Counterclaim and for Indemnification, on each party of record registered with the CM/ECF system by electronically filing it with the Clerk of the United States District Court for District of Minnesota, who will send notification of such filing to each of them, and by mailing a copy to each party of record not registered with the CM/ECF system, if any.

By: /s/ Mark G. Pryor