UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rimac Seguros y Reaseguros,<br>Komatsu America Corporation,<br>Komatsu Mitsui Maquinarias Peru S.A.,<br>Distribuidora Cummins Peru SAC,<br>Cummings, Inc., and Hensley<br>Industries, Inc.<br><br>        Plaintiffs,<br><br>v.<br><br>C.H. Robinson International, Inc.,<br>d/b/a CHRistal Lines,<br><br>        Defendant. | Civ. No. 21-1288 (PAM/BRT)<br><br><br><br><br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on a Motion to Dismiss Defendant C.H. Robinson International, Inc.'s counterclaim, brought by four of the six Plaintiffs. For the following reasons, the Motion to Dismiss is denied.

## BACKGROUND

Plaintiff Rimac Seguros y Reaseguros is a maritime insurance company that provides cargo insurance for several manufacturers who are also Plaintiffs here—Komatsu America Corporation, Komatsu Mitsui Maquinarias Peru S.A., Distribuidora Cummins Peru SAC, Cummings, Inc., and Hensley Industries, Inc. In 2018, the Plaintiff manufacturers contracted with Defendant C.H. Robinson International, Inc., doing business as CHRistal Lines ("CHR"), to ship certain goods from Miami to Peru. Rimac Seguros insured this shipment.

CHR is what is known in maritime parlance as a non-vessel-operating common carrier ("NVOCC"). As the name suggests, NVOCCs "perform[] all services of an ocean carrier except without operating the vessels." "What is an NVOCC?," https://www.ncbfaa.org/Scripts/4Disapi.dll/4DCGI/cms/review.html?Action=CMS_Document&DocID=21584&MenuKey=about (last visited Mar. 9, 2022). Thus, the NVOCC enters into a bill of lading with merchants or manufacturers who want to ship goods and also enters into a bill of lading with the owner/operator of the ship that will actually do the shipping. The bill of lading between the NVOCC and merchant is called the house bill of lading.

In this case, CHR secured the services of a ship, the AS Fortuna, to carry Plaintiff manufacturers' goods. On September 18, 2018, the ship experienced engine failure and grounded on a sandbar outside of Guayaquil, Ecuador. A salvage company was brought in to salvage the cargo. Plaintiff manufacturers' cargo was all saved and eventually reached its destination safely.

Plaintiff manufacturers were required to chip in 27.31 percent of the value of the AS Fortuna's cargo as their proportional share of the salvage company's fee.[1] Rimac Seguros alleges that it paid nearly $600,000 to its insureds as reimbursement of their share of the fee. (Compl. (Docket No. 1) ¶ 15.) Rimac and its insureds brought this salvage indemnity action under maritime common law, seeking indemnification from CHR for that money. Plaintiffs allege that CHR failed to provide a seaworthy vessel to ship their goods,

---

[1] The record does not reflect on what basis this proportional share was calculated.

thus entitling them to indemnification for the salvage company's fee.  CHR counterclaimed seeking indemnity from four of these Plaintiffs under the terms of the house bill of lading.[2] In the counterclaim, CHR contends that the "general average" clause in the house bill of lading requires the manufacturer-shippers to indemnify CHR for all losses, including the salvage expenses for which they here seek indemnity from CHR, as well as CHR's attorney's fees and costs in defending against Plaintiffs' action.

Plaintiffs initially brought their lawsuit in Hennepin County.  CHR moved to dismiss it based on the forum-selection clause in the house bill of lading, which required that all lawsuits be brought in federal court in Minnesota, not state court.  After briefing and a hearing, the Hennepin County court granted CHR's motion and dismissed the action without prejudice.  That decision rejected the Plaintiff manufacturers' argument that the bill of lading did not apply to the dispute.[3]  (Def. Ex. M (Docket No. 12-1) at 43-55.)  The state court also determined that the salvage operations were "general average" expenses (id. at 51), meaning that they are expenses "made for the common safety of ship and cargo [and are] borne by all property interests involved in the common maritime adventure." (Id. Ex. H (Docket No. 12-1) at 20.)

---

[2] CHR does not assert its counterclaim against Rimac or Komatsu America Corporation, and thus movants here are the four remaining Plaintiffs.

[3] Plaintiffs' argument that the house bill of lading does not apply is in contrast to their Complaint (in both state and federal court) that relies on the forum-selection clause in that contract to contend that venue is proper in Minnesota.

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a pleading need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the [party] is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012).

Plaintiffs first argue that the counterclaim must be dismissed because their claim is one for common-law salvage indemnification, not general average. To the extent that Plaintiffs' argument in this regard depends on their contention that the house bill of lading does not apply to the dispute, collateral estoppel precludes that argument. But more fundamentally, as discussed further below, whether the expenses were or were not "general average" expenses is a question of fact, not law.

CHR contends that the state-court's pronouncements on the applicability of the general average clause are also entitled to preclusive effect, and that the Court could deny the motion on that basis alone. But the state court's determination that the expenses were general average expenses was not necessary to its holding that the Plaintiffs chose the wrong forum for their lawsuit, and collateral estoppel does not apply to the state court's dicta regarding the general average issue.

Moreover, whether the expenses were or were not general average expenses is a matter that cannot be resolved on a motion to dismiss. Plaintiffs argue that general average expenses are those incurred when a ship owner has to throw cargo overboard or otherwise sacrifice some cargo to save the ship and the remaining cargo. According to Plaintiffs, that is not what happened here. But the owner of the AS Fortuna declared a "general average" loss at the time and billed the shippers accordingly. (Docket No. 12-1, Ex. H.) Further, "general average" may include any expenses borne in common by shippers of cargo. See "Average," https://www.britannica.com/topic/average-maritime-law#ref276186 (last visited 2/4/2022) ("A general average is one that is borne in common by the owners of all the property engaged in the venture."). Plaintiffs conceded at the hearing that whether an expense is general average is a factual question but insisted that because they pled that the expenses were not general average, that ends the inquiry. CHR pled that the expenses were general average expenses, however, and for purposes of this Motion, CHR's plausibly pled facts control. Whether the expenses are indeed general average expenses is a fact determination that cannot be resolved on a motion to dismiss.

Plaintiffs also assert that the "general average" clause in the house bill of lading is unenforceable under Minnesota law. Plaintiffs have alleged that CHR was negligent, specifically that CHR failed to provide a seaworthy vessel. Enforcing the "general average" clause thus ostensibly requires Plaintiffs to indemnify CHR for its own negligence. Plaintiffs argue that this runs afoul of Minnesota's requirement that a contract purporting to require indemnification against another's negligence must specifically provide that negligent acts are included in the indemnification, something the general

5

average clause does not do. Again, however, neither the issue of CHR's negligence nor the applicability of Minnesota law to this maritime contract is a matter that cannot be determined at this stage.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss (Docket No. 20) is **DENIED**.

Dated: <u>Tuesday, March 15, 2022</u>

<u>*s/ Paul A. Magnuson*</u>
Paul A. Magnuson
United States District Court Judge